IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SHARDA L. MULLINS-MOORE                                                    PLAINTIFF

      vs.                                  Civil No. 1:21-CV-01006

SGT. SONJA COLLIER, Jail Administrator, Columbia
County; DOUG WOODS[1]; and LADONNA YOUNG,
Nurse, Columbia County Detention Center                                    DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed *pro* se by Plaintiff, Sharda L. Mullins-Moore under 42 U.S.C. § 1983. On April 1, 2021, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12). Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 19). Plaintiff has filed a Response in opposition to the motion. (ECF No. 23). The Court finds this matter ripe for consideration.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Division of Correction ("ADC") – Benton Unit. His claims in this lawsuit arise from alleged incidents which occurred at the Columbia County Detention Center ("CCDC") in Magnolia, Arkansas. (ECF No. 1).

On December 11, 2020, Plaintiff was arrested and booked into the CCDC for a probation violation. (ECF No. 21-2). He was released from the CCDC on March 18, 2021, but was booked back into the CCDC the following day. On May 14, 2021, Plaintiff was released from the CCDC to the ADC. *Id.*

---

[1] Defendant Doug Wood is incorrectly referred to in the case caption as "Woods".

Almost six months prior to his incarceration in the CCDC, Plaintiff was seen at the Magnolia Regional Medical Center on April 17, 2020, for an evaluation of an inguinal hernia. (ECF No. 21-8, pp. 2-3). Three days later, a CT was performed on Plaintiff. (ECF No. 21-8, p. 10). The CT noted, "there is a direct left inguinal hernia which contains nonobstructed loops of small bowel. Hernia opening measures at least 2.7 cm. There is no evidence for a right inguinal hernia. Negative for pelvic adenopathy. Urinary bladder is normal." *Id.* On April 22, 2020, Plaintiff underwent surgery for the left inguinal hernia. It was noted that Dr. Menendez performed a repair of direct inguinal hernia using a mesh. *Id.* at pp. 4-9.

On Plaintiff's intake medical form at the CCDC in December of 2020, he marked "yes" for asthma, heart trouble, hypertension, and diabetes and "no" for all other questions. (ECF No. 21-2, p.2). Plaintiff also noted he took medication but did not know the names of the medications. He also stated he had a heart murmur. *Id.*

On December 11, 2020 – the same day he was booked into the CCDC - Plaintiff submitted a grievance request in which he stated, "I need a doctor for my stomach." (ECF No. 21-3, p. 1). That same day Columbia County personnel Sonja Collier replied, "put in medical request with what medical issues you are having, this is not CID request." *Id.*

Later that day, Plaintiff submitted a medical request, stating "I need to see the doctor about this knot in my stomach. I was to have surgery next week on Dec. 15th, 2020. I also have a heart memor I need medical attention for." (ECF No. 21-4, p. 1). Four days later, Columbia County jail personnel responded stating, "you did not mention this at intake. What hospital are you to have surgery? What doctor? What medication have you been taking for heart murmur? When was last treatment?" *Id.* In response that same day – December 15, 2020 – Plaintiff submitted a medical

request, stating:

> THIS KNOT IN MY STOMACH IS CAUSING a lot of pain. Its like this knot is getting bigger or even shifting, I don't know if its because of my last surgery where there where complications by me losing a lot of blood and I never had any blood transfusions done after that which I was suppose to start per; doctor antoon, this knot is aching every time I move. I cant sleep on my stomach or side due to the pain. Also it hurts after every bowl movement. Im hurting bad I need a surgon of a doctor asap. I was to have this knot removed by doctor merandez replacement. Report.)

(ECF No. 21-4, p. 2). Two days later Columbia County personnel responded stating, "nurse advised and checking on you saying had scheduled surgery for December 15th. She is ordering medication for pain". *Id.* at p. 3.

On December 17, 2020, CCDC personnel noted on Plaintiff's chart: "not on any meds. At this time WalMart pharmacy has <u>NO Record</u> of ever filling medication for Sharda Mullins family bringing medication today 12-17-20". (ECF No. 21-4, p. 2). Another note on Plaintiff's chart indicates his family never delivered any of his medications. *Id.*

Ladonna Young is an Advanced Practice Registered Nurse employed by the CCDC. (ECF No. 21-9, p. 1). According to her affidavit, she provided medical treatment to Plaintiff during his incarceration in the CCDC from December 11, 2020, to May 14, 2021. *Id.*

Young testified Plaintiff submitted numerous sick call requests with complaints of a hernia which resulted in stomach pain, painful bowel movement and urination, darkened and/or bloody stools, and spitting/coughing up blood.[2] In addition, she states Plaintiff frequently demanded surgical removal of his purported hernia. (ECF No. 21-9, p. 1).

On or about December 15, 2020, Young put in a standing order for Plaintiff to have Tylenol as needed for pain management. (ECF No. 21-4, p. 3). On December 24, 2020, Young started

---

[2] During the five months he was incarcerated in the CCDC, Plaintiff submitted more than one hundred (100) medical requests. These requests are specifically set forth in Defendants' Statement of Facts. (ECF No. 21).

Plaintiff on Pantroprazole for stomach pain/potential acid reflux. *Id., see also* (ECF No. 21-5, 1). Plaintiff's medication history indicates Plaintiff took Pantopazole on December 24 and December 25, 2020, but declined to take the medication on December 26, 2020. *Id.*

On December 27, 2020, Plaintiff submitted a medical request stating:

> My stomach is hurting, i don't' know what medicine that you all or giving me as well as the knowledge of the side effects of the mediation that you all have me take. I haven't seen a doctor or a nurse so I can't take anything new that I have no recollection of taking prior to or before prescribed or anyone medically certified to explain to me of what it is that im taking or to take. So therefore im still in need of medical attention.

(ECF No. 21-4, p. 8). The following day, CCDC personnel responded, "the medication that the nurse ordered is what Dr. Antoon had ordered. It is a generic to Protonix." *Id.* Plaintiff's medication history reveals Plaintiff began taking Pantopazole again on December 28, 2020 but declined to take the medication on January 10, 2020. *Id.* at pp. 2, 7.

On January 7, 2021, Young prescribed Plaintiff SMZ-TMP, an antibiotic, to rule out a urinary tract infection. (ECF No. 21-5, p. 5). Plaintiff declined to take this medication until January 10, 2021. *Id.* at p. 7. The following day Plaintiff again declined to take this medication. *Id.* at p. 8.

Plaintiff also refused other prescribed medications including but not limited to – Sumatriptan for migraines, Divalproex, Olanzapine numerous occasions through his incarceration in the CCDC and then started taking the medications again. (ECF No. 21-5, pp. 1-119).

On January 12, 2021, Young examined Plaintiff for complaints relating to his purported hernia. She then ordered a CT, Basic Metabolic Panel, Complete Blood Count, and Urine Analysis to be performed. In addition, she prescribed Plaintiff Ibuprofen 800 mg as needed. *Id., see also* (ECF No. 21-4, p. 14).

On January 12, 2021, Plaintiff filed his original Complaint in this lawsuit. (ECF No. 1).

The Complaint was signed and dated on December 29, 2020. *Id.*

On January 14, 2021, Plaintiff underwent a CT, Basic Metabolic Panel, and a Complete Blood Count at Magnolia Regional Medical Center. All the tests were normal. (ECF No. 21-4, pp. 16-22). On January 19, 2021, Young ordered a hernia belt for Plaintiff. (ECF No. 21-4, p. 24). The next day, Plaintiff was allowed Pepto Bismal, laxatives, and stool softener as needed. *Id.* On January 22, 2021, Plaintiff was provided with the hernia belt. (ECF No. 21-5, p. 20).

In response to this Court's order, Plaintiff filed an Amended Complaint on January 29, 2021. (ECF No. 6). It was signed and dated January 15, 2021.

On February 1, 2021, Plaintiff underwent a Urine Analysis at Magnolia Regional Medical Center, which returned with normal results. (ECF No. 21-4, p. 19). Young testified there were no findings from Plaintiff's CT, Basic Metabolic Panel, Complete Blood Count, or Urine Analysis indicating Plaintiff had a hernia that required surgery. (ECF No. 21-9, p. 2).

On February 9, 2021, Plaintiff submitted a grievance requesting to be allowed to work during his incarceration in the CCDC. (ECF No. 21-3, pp. 15-16). The grievance stated in part:

> …being able to move around will help. Sitting in place and lying down with a hernia belt doesn't help. But I can do some work it keeps me from being lazy…yes I'll love to work and exclude my pain. I have to work it's my nature a must do…thanks in advance. If you would choose me I'm sure I can do laundry cook dishwash, or anything you sure wouldn't regret it on my kids. Please…also I'll make do with sick call. I can manage the pain. I've been doing it. And my apologizes as well…i'll also due away with this law suite for your consideration!...

*Id.*

The next day Plaintiff submitted a grievance stating, "I can lift anything over 15 lbs as long as I have a hernia bel I thought." (ECF No. 21-3, p. 17). CCDC personnel responded:

> You can ask nurse about this at medical call. Im not sure about lifting with or without the belt, so check with her before taking a chance on your well being. Glad

you are not in severe pain now, since you are asking to be trustee. Hope you keep improving, we will continue to monitor your blood pressure and sugar until nurse advises otherwise.

*Id.*

Defendant Young testified Plaintiff refused to see her for medical treatment on February 27, and March 5, 2021. (ECF No. 21-9, p. 2).

On September 30, 2021, Plaintiff gave his sworn testimony during a deposition. (ECF No. 21-7). He testified his current medical conditions include blood pressure, asthma, ulcer, and a recurring hernia and he has seen a doctor for all these conditions. *Id.* at p. 4.

Plaintiff testified he had a hernia back in 2008 and had surgery in 2020 to remove the hernia and he has another hernia reoccurring. (ECF No. 21-7, p. 4). He states he is not currently on any medication for this hernia. *Id.*

Plaintiff testified he visited the hospital in January 2021 for a recurring hernia and throwing up blood. (ECF No. 21-7, p. 4). He went on to state the hospital put him on medication and told him there was nothing else they could do at the time due to his incarceration. *Id.*

Plaintiff also testified he refused to continue to see medical personnel at the CCDC because he did not want to continue to pay the $20.00 fee for the same recurring problems. (ECF No. 21-7, p. 7).

Plaintiff testified he has not had hernia surgery after being transferred to the ADC. (ECF No. 21-7, p. 5). He states he notified the ADC of his hernia during intake and ADC medical personnel looked at his hernia, but because the hernia could be reduced it was not an emergency issue for the ADC. *Id.* at p. 8. In addition, Plaintiff testified he has not put in any sick calls relating to his hernia at the ADC. *Id.*

Plaintiff testified he wrote grievances to Chief Deputy Wood, but Wood never responded

to them. (ECF No. 21-7, p. 8). He states the grievances he wrote were responded to by Jail Administrator Sonja Collier and he never spoke directly with Wood. *Id.* Plaintiff went on to state Wood should have been responsible since his officers did not do their job. *Id.* at p. 9.

Plaintiff testified Sonja Collier denied him medical care because she did not do something immediately when he was throwing up blood. Plaintiff stated she did not do anything for a month until he was sent to the hospital for a CAT scan and bloodwork. (ECF No. 21-7, p. 9).

Plaintiff testified LaDonna Young denied him medical treatment because he was not sent to the hospital to receive a shot to keep him from vomiting blood. (ECF No. 21-7, p. 9). However, Plaintiff testified that Young went over his CAT scan results with him and told him that his results were normal. *Id.*

Plaintiff also testified neither he, Young, nor the ADC believed he needed surgery for his hernia right now. (ECF No. 21-7, p. 10). Plaintiff went on to state he did not want to have hernia surgery while incarcerated at the CCDC or the ADC but instead wanted to be released to go home to have surgery. *Id.*

According to the affidavit of Sonja Collier, the CCDC has policies in place for the medical treatment of its detainees. (ECF No. 21-1). She describes them as follows:

> …detainees shall be provided access to necessary health care through routine sick call procedures. All sick calls shall be conducted by a licensed medical professional. No employee or official of the county shall interfere with a detainee's access to sick call…

> A detainee is entitled to appropriate and necessary medical, dental and mental health care…

> …health care services within the Detention Center are adequate for the facility and managed in accordance with accepted health care policies and procedures…

> All perceived emergency medical situation[s] shall receive immediate attention.

Emergency medical situations will have priority over routine Detention Facility operations until the emergency is resolved…

*Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff filed his original Complaint on January 12, 2021. (ECF No. 1). In response to this Court's order, on January 29, 2021, Plaintiff filed an Amended Complaint naming Sonja Collier, Doug Wood, and LaDonna Young as Defendants. (ECF No. 6). At that time, Plaintiff states he was in jail awaiting trial on pending criminal charges and goes on to describe this as "alleged probation violation". *Id.* at p. 3. He is seeking compensatory damages and is suing Defendants in their individual and official capacities in Claims One and Two. Plaintiff is suing Defendant Young in her personal capacity only in Claim Three. *Id.* at pp. 4-7.

Plaintiff describes his personal capacity claim in Claim One against Defendants Collier and Young as "denial of medical care by making aware of me throwing-up blood prior surgery complications, blood in stool, and black bowl movements". (ECF No. 1, p. 4). He states this occurred "approximately 12-17-2020 and 12-23-20, 12-15 2020" and alleges "no medical attention nor treatment due to no jail movement under Covid-19. Still having stomach pains and blackened, dark black bowl-movement as of now. As well as prior surgery complications from 3 recent hernia removals which since in custody of CCSO has another hernia now came back in surgical area." *Id.*

Plaintiff describes his official capacity claim for Claim One as follows:

In April 2020 I was transported to UAMS Doctor here in Magnolia for a referral for surgery which I obtain the referral; still under Covid-19 no jail movement then at the time. Therefore I'm not allowed transportation to any Doctor for internal bleeding under Covid-19 (no jail movement as of now Dec. 2020. Another hernia has accured.…

(ECF No. 6, p. 5).

Plaintiff describes Claim Two as "denial of medical care due to the nature he was informed and yet to do anything of the medical emergency matter". (ECF No. 6, p. 5). He identifies Defendant Wood as the Defendant who violated his rights and alleges this occurred "12-21 at 10:48a.m., 1-17-21 9:36a.m.". *Id.* Plaintiff goes on to state, "by lack of duties of his job title being informed on two or more different times of my emergency medical matters; another hernia has formed." *Id.*

Plaintiff describes his official capacity claim against Defendant Wood in Claim Two as "By ignoring my grievance and passing it down to a lower ranking officer the Jail admin whom I written the grievance on for denial of medical care without any response even tho he had recollection of the emergency medical matter." *Id.* at p. 6.

In Claim Three, Plaintiff alleges Defendant Young "denial of medical care and or treatment from Doctor or Doctor's…12-13-2020 thru 1-13-2021." (ECF No. 6, p. 6). He goes on to state:

> By prescribing medication without even speaking to me or letting me know what it is I'm to take. Not explaining side effects that the medications my occure with me. Also allowing my medical matter to only worsen for lack of a medical emergency. Another hernia has formed in my recent surgical area.

*Id.*

On October 19, 2021, Defendants filed the instant Motion for Summary Judgment, a Brief in Support of the Motion, and a Statement of Facts. (ECF Nos. 19, 20, 21). They argue: 1) there is no proof of any personal involvement by Defendant Wood; 2) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; 3) Defendants are entitled to qualified immunity; and 5) there is no basis for official capacity liability. (ECF No. 19).

On November 8, 2021, Plaintiff filed an unverified Response to the motion stating:

I Sharda L. Mullins-Moore showed Mr. Afron, Mr. Gyse, Mr. Will, Mr. Tommy,

and Mr. Morgan all jailors of Columbia County Detention Center; blood on several different occasions that I've throw up or had in my bowels. On 1-12-2021 30 days after I've first started enduring pain, suffering and throwing up blood while in Columbia County's custody was I then seen by medical staff.

(ECF No. 23).

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

# IV. DISCUSSION

## A. Denial of Medical Care – Personal Capacity Claims

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his claim of denial of medical care, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). It is well established that inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors

remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Long*, 86 F.3d at 765).

### 1. Claim One - Defendants Collier and Young

Plaintiff alleges Defendant Collier and Young denied him medical care after he informed them, he was "…throwing-up blood prior surgery complications, blood in stool, and black bowl movements…as well as prior surgery complications from 3 recent hernia removals which since in custody of CCSO has another hernia now came back in surgical area." (ECF No. 1, p. 4). *Id.* This claim is simply not supported by the summary judgment record.

Six months before being booked into the CCDC Plaintiff underwent a CT and surgery for a left inguinal hernia. The CT noted, "there is a direct left inguinal hernia which contains nonobstructed loops of small bowel. Hernia opening measures at least 2.7 cm. There is no evidence for a right inguinal hernia. Negative for pelvic adenopathy. Urinary bladder is normal." *Id.* After Plaintiff underwent surgery for the left inguinal hernia it was noted a Dr. Menendez performed a repair of direct inguinal hernia using a mesh. *Id.* at pp. 4-9. Nothing was noted about any complications with the surgery. Consequently, the Court finds Plaintiff's complaints – which he did not mention on his intake form at the CCDC – concerning another hernia and related symptoms – do not constitute serious medical needs. The symptoms were not diagnosed by a physician and his complaints were not something that a lay person would consider to be serious.

However, even if the Court assumes - for purposes of this opinion - the issues described by Plaintiff constitute serious medical conditions, there is no evidence Defendants Young, or Collier were deliberately indifferent to those needs. To the contrary, the record reflects Defendant Collier, the CCDC's Jail Administrator, immediately directed Plaintiff to submit a medical request – as opposed to a grievance – when she noticed he was utilizing the wrong process to obtain medical

assistance on the same day he was booked into the CCDC. Plaintiff followed her directions that same day and submitted a medical request. From then on, Defendant Young responded to Plaintiff's medical requests, and it does not appear Defendant Collier had any further involvement in Plaintiff's care.

Just four days after Plaintiff was booked into the CCDC, Defendant Young put in a standing order for Plaintiff to have Tylenol as needed for pain management. Then on December 24, 2020, she started Plaintiff on Pantroprazole for stomach pain/potential acid reflux. *Id., see also* (ECF No. 21-5, 1). On January 7, 2021, Defendant Young prescribed Plaintiff SMZ-TMP, an antibiotic, to rule out a urinary tract infection. As previously stated, Plaintiff often refused to take these medications as prescribed by Defendant Young.

On January 11, 2021, Defendant Young examined Plaintiff for complaints relating to his purported hernia. She then ordered a CT, Basic Metabolic Panel, Complete Blood Count, and Urine Analysis to be performed. In addition, she prescribed Plaintiff Ibuprofen 800 mg as needed for pain management. All the results from the tests performed on Plaintiff were within normal range and there was no indication Plaintiff had a hernia which required surgery. (ECF No. 21-9, p. 2). Finally, the summary judgment evidence reflects Plaintiff refused to see Defendant Young for medical treatment on February 27, and March 5, 2021, because he didn't want to pay the $20.00 co-pay.

Accordingly, the Court finds neither Defendant Young or Collier were deliberately indifferent to Plaintiff's medical needs, and they are entitled to summary judgment on Plaintiff's claims set forth in Claim One.

### 2. Claim Two - Defendant Wood

Plaintiff describes his claim against Defendant Wood as "denial of medical care due to the

nature he was informed and yet to do anything of the medical emergency matter…by lack of duties of his job title being informed on two or more different times of my emergency medical matters; another hernia has formed." (ECF No. 6, p. 5).

At the time of the events in question, Defendant Wood was the Chief Deputy at the CCDC. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

The summary judgment record reveals Plaintiff sued Defendant Wood because he is the Chief Deputy at the CCDC – not based on his personal involvement in any alleged denial of medical care. Plaintiff testified in his deposition he never spoke directly to Defendant Wood, in person or in writing, about his medical concerns. Instead, Plaintiff testified the grievances he wrote to Defendant Wood were responded to by Defendant Collier. There is no evidence Defendant Wood had any knowledge of Plaintiff's medical conditions or that he was involved in way with Plaintiff's medical care or lack thereof. Accordingly, Defendant Wood is entitled to summary judgment on Plaintiff's claim for denial of medical care.

### 3. Claim Three – Defendant Young

In Claim Three, Plaintiff alleges Defendant Young violated his constitutional right to adequate medical care when she prescribed him medications without speaking to him about what medications he was to take and failed to discuss any side effects of the medication with him. (ECF

14

No. 6, p. 6).[3]  Defendants have not specifically addressed this claim in their summary judgment motion. However, the Court will address this claim *sua sponte* pursuant to Fed. R. Civ. Proc. 12(b)(6).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts, which if proven true, would demonstrate the named defendants violated the plaintiff's federal constitutional rights while acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Although federal courts must view pro se pleadings liberally, such pleadings may not be merely conclusory.  The complaint must allege facts, which if true, state a claim as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions").

Here, Plaintiff does not identify what medications Defendant Young prescribed for him which she failed to discuss with him. Second, Plaintiff does not describe any side effects he allegedly suffered from the medications she prescribed. Third, the summary judgment record reflects Plaintiff only asked once about a medication he was being prescribed and was immediately told it was a generic form of a medication he had previously been prescribed by his former doctor. Finally, all tests that were ordered by Defendant Young, revealed Plaintiff had no conditions which required any treatment.

Accordingly, the Court finds Plaintiff has failed to state a claim against Defendant Young in Claim Three.

---

[3]In addition, Plaintiff alleges Defendant Young "also allowing my medical matter to only worsen for lack of a medical emergency. Another hernia has formed in my recent surgical area." (ECF No. 6, p. 6). This allegation has already been addressed under Claim One and found to be without merit.

### B.  Official Capacity Claims

Plaintiff also sues Defendants in their official capacities in Claims One and Two. Under §
1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims
may be stated against a defendant in both his individual and his official capacities. *Gorman v.
Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to
a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d
1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants
are treated as claims against Columbia County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873
(8th Cir. 2010).

"[I]t is well established that a municipality [o county] cannot be held liable on a *respondeat
superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View,
Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Columbia County
under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to
an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d
814, 817 (8th Cir. 2009) (citation omitted).

In *Johnson v. Douglas County Medical Dept.*, 725 f.3d 825 (8th Cir. 2013), the Court
outlined the necessary elements of establishing the existence of an unconstitutional custom. It
stated:

> To establish a claim for 'custom' liability, [Plaintiff] must demonstrate: 1) the
> existence of a continuing, widespread, persistent pattern of unconstitutional
> misconduct by the governmental entity's employees; 2) Deliberate indifference to
> or tacit authorization of such conduct by the governmental entity's policymaking
> officials after notice to the officials of that misconduct; and 3) that Plaintiff was
> injured by acts pursuant to the governmental entity's custom, i.e., that the custom
> was the moving force behind the constitutional violation.

*Id.* at 828 (citations omitted).

The summary judgment record confirms the CCDC had policies in place to provide detainees with constitutionally sufficient medical care. Plaintiff has not alleged or described any policy, practice, or custom of Columbia County that contributed to a violation of Plaintiff's constitutional rights. There is no summary judgment evidence the Defendants acted in a manner showing the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct . . ."

Accordingly, Plaintiff's official capacity claims against Defendants fail as a matter of law. *Id.*

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 19) is **GRANTED** as to Plaintiff's individual and official capacity claims against Defendants Collier, Young and Wood for denial of medical care in Claims One and Three. These claims are **DISMISSED WITH PREJUDICE.**

Claim Three against Defendant Young is **DISMISSED WITH PREJUDICE** for failure to state a claim.

A judgment of even date shall be entered separately.

**IT IS SO ORDERED,** this **24th day of March 2022**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE